**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK E. DOTTORE,** | ) | **CASE NO.1:09CV2636** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **THE HUNTINGTON NATIONAL BANK** | ) | **<u>OPINION AND ORDER</u>** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant The Huntington Bank's Motion to Dismiss the Amended Complaint (ECF # 62). For the following reasons, the Court grants, in part, and denies, in part, Defendant's Motion.

On June 27, 2013, Mark E. Dottore, Receiver for the IPOF Fund, filed his Amended Complaint alleging claims for Negligence, Fraud and Civil Conspiracy against Defendant The Huntington Bank ("Huntington"). Dottore contends that Huntington and a number of its employees knew of, participated and/or conspired in the fraudulent activities of David Dadante, who was convicted of running a Ponzi scheme, which defrauded investors of tens of millions of dollars. In September 2001, Dadante opened a small business checking account

at Metropolitan under the name of GSGI and another small business checking account with a dual signature requirement at Great Lakes under the name of IPOF Fund. In 2003, Sky Bank merged with Great Lakes and Metropolitan.[1] In 2004, Dadante opened a business money market account at Sky Bank under the name of IPOF Fund.

Throughout the life of the Ponzi scheme, Dadante moved money through the Sky accounts in numerous transactions that Dottore argues should have raised flags with Sky and its employees. Rather than investigate the transactions or notify IPOF Fund and authorities, Dottore contends Sky actually participated in the transactions and actively concealed and willfully failed to disclose Dadante's fraud to the IPOF Fund.

## Background Facts

According to the Amended Complaint, from 1999 to November 2005 David Dadante was the general partner and/or president or investment manager of IPOF Fund. The IPOF Fund began as a general partnership and subsequently became a limited partnership. Dadante solicited money from investors to invest in the IPOF Fund. In November 2005, IPOF Fund was discovered to be a Ponzi scheme. Dadante had embezzled IPOF Funds to support a lavish lifestyle, often by transferring IPOF Funds to his own GSGI account.

Dadante was ultimately convicted of Federal Securities Fraud in 2007 after having moved over $28,000,000 of IPOF Funds for unlawful purposes.

## STANDARD OF REVIEW

"In reviewing a motion to dismiss, we construe the complaint in the light most

---

1 It is undisputed that Huntington is the successor in interest to Sky Bank and the Court will refer to Sky Bank as alleged in the Amended Complaint, though potential liability resides with Huntington as successor.

favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc.* v. *Treesh,* 487 F.3d 471,476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusion, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 1950.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001).

As an initial matter, the Court has subject matter jurisdiction over the suit even though it is between non-diverse parties and all claims alleged are state law claims because it is considered ancillary to the underlying Receivership case over which the Court has jurisdiction. As the Sixth Circuit has held:

> We begin with the undisputed proposition that the initial suit which results in the appointment of the receiver is the primary action and that any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction.

*Haile v. Henderson Nat. Bank* 657 F.2d 816, 822 (6th Cir. 1981), citing *Pope v. Louisville, New Albany & Chicago Ry. Co.*, 173 U.S. 573, 19 S.Ct. 500, 43 L.Ed. 814 (1899)

**DEFENDANT'S MOTION TO DISMISS**

**Negligence**

Plaintiff's Amended Complaint alleges Sky Bank owed a duty of ordinary care to its customers and breached that duty by failing to employ internal controls, policies and procedures with respect to the Accounts. Sky Bank consciously ignored red flags to the detriment of the IPOF Fund. In particular, the Receiver's Amended Complaint alleges:

> 14. Throughout the course of and to perpetrate his Ponzi scheme, Dadante moved IPOF Fund assets through the Accounts in numerous, highly suspicious transactions that should have raised warning flags with and warranted further investigation by Sky and its employees, even with the most basic internal banking controls, policies and procedures in place.
>
> 30. Dottore further alleges that Sky permitted Dadante to dissipate IPOF Fund assets by failing to implement, or failing to exercise, at both the outset of Sky' relationship with Dadante and thereafter, any internal controls and systems designed to monitor and determine normal or expected account activity or to check for suspicious transaction activity, falling well below the ordinary standard of care expected to be exercised by financial institutions.

Defendant contends the Court has already determined the relationship between the Receivership entities and the Bank was governed by contract when the Court ruled on Defendant's Motion to Compel arbitration. Therefore, Plaintiff cannot assert liability under a

tort theory when the parties' obligations were governed by contract. As the Court held in *U.S. Surety Co. v. Keycorp*, No. 1:05CV 2337, 2007 WL 2331942 (N.D. Ohio Aug. 13, 2007) "Obligations, if at all, are imposed upon [a bank]by contract; and 'it is no tort to breach a contract.'" quoting *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 694 (1997).

Plaintiff relies on *Wuliger v. Liberty Bank, N.A.*, No. 3:02CV1378, 2004 WL 3377416, 12 (N.D.Ohio, 2004) for the proposition that the bank owes an independent duty to customers to exercise ordinary care. However, *Wuliger* expressly held, "***In the absence of an agreement between the parties***, a bank's obligation is limited to the exercise of ordinary care." (Emphasis added). Here, Plaintiff does not dispute that the parties had a contractual relationship. In fact, his own materials, attached to his Amended Complaint, show a change of signature requirement filed with Sky Bank in 2005 which strongly implicates a contract prior to 2005. Furthermore, the parties all acknowledge and the Amended Complaint alleges Dadante opened the Accounts with the predecessor Banks in 2001. The parties acknowledged these accounts were subject to agreements. This fact was confirmed in the Sixth Circuit's Opinion of May 4, 2012, affirming the Court's denial of a Motion to Compel Arbitration.

Because the Plaintiff's Amended Complaint fails to allege the parties' duties are not governed by a contract, the Court holds this failure to plead is fatal to the negligence claim in light of the previous law of the case that Plaintiff's and Defendant's relationship was contractual.

Because the parties had a contractual relationship, Ohio's economic loss doctrine further bars the Receiver's negligence claim. As stated in *Pavlovich v. National City Bank*, 342 F.Supp.2d 718, 733 (N.D.Ohio,2004).

> In general, under Ohio law, the "economic loss" rule provides that there is no cause of action in negligence for claims arising under a contract. In the seminal case on this matter, *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624 (1989), the Supreme Court of Ohio held that "[t]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* at 630 (quotations omitted). When parties reduce their relationship and obligations to a written contract, there is generally no independent duty of care. Consequently, "when the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract." *Id.* at 631 (quotations omitted).

Having already established that the parties' had a contractual relationship, Plaintiff cannot recover purely economic losses under a tort theory of liability.

Lastly, Plaintiff's negligence claim is barred by the Uniform Fiduciary Act. The Act reads in pertinent part:

> If a check is drawn upon his principal's account by a fiduciary who is empowered to do so, the bank may pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check or with knowledge of such facts that its action in paying the check amounts to bad faith. Rev.Code § 1339.09.

"The UFA amounts to a shield from liability when a bank accepts instructions from a customer's fiduciary who has authority to transact the business in question." *Master Chem. Corp. v. Inkrott*, 55 Ohio St.3d 23, 563 N.E.2d 26, 30 (1990).[2]

---

[2] The UFA was revised and renumbered in 2007. The revision states:
If a deposit is made in a bank to the credit of a fiduciary as such, the bank may pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which the deposit is entered, without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of the obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith.

If such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the

Fiduciary was defined as:

> Fiduciary includes a trustee under any trust, expressed, implied, resulting, or constructive, an executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust, or estate.

R.C. § 1339.03(B).

Here, the Amended Complaint alleges Dadante was "general partner and/or president or investment manager of IPOF Fund." (Amended Complaint at para. 6). It further alleges Dadante opened and maintained the accounts and received the statements. Thus, the Amended Complaint's allegations establish Dadante was a fiduciary of the IPOF Fund as defined by Ohio law with the power to draw on the accounts. Therefore, absent actual knowledge of a breach of his fiduciary obligations amounting to bad faith, Defendant is shielded from any liability arising in negligence. The actual knowledge and bad faith exception would not apply to a negligence claim.

Therefore, for the foregoing reasons, the Court grants Defendant's Motion to Dismiss Count One of Plaintiff's Amended Complaint for Negligence.

**Fraud**

According to Huntington, Plaintiff's Amended Complaint fails to state a claim for actual fraud because it fails to allege any misrepresentation by the Bank. Neither does Plaintiff allege Sky Bank or its employees received any of the embezzled funds. Instead,

---

principal if the fiduciary in fact commits a breach of the obligation as fiduciary in drawing or delivering the check.

ORC § 5815.06 (effective Jan. 2007).

Plaintiff's allegations support, at best, a claim that Sky Bank facilitated, assisted or aided and abetted Dadante's fraud. Because the Court has previously determined Ohio does not recognize a cause of action for aiding and abetting fraud, Defendant contends Plaintiff's fraud claim fails as a matter of law because it merely recasts Plaintiff's prior aiding and abetting claim as fraud without sufficient factual support.

Furthermore, Huntington argues Plaintiff fails to allege any active concealment on the part of Sky Bank or its employees. While he generally avers that Sky actively concealed the transactions, there is no sufficiently specific factual allegation supporting such a conclusory allegation.

Plaintiff's Amended Complaint alleges Dadante withdrew $100,000.00 from the GSGI account using an official check made payable to New York New York, a hotel and casino. The check was signed and issued by a Sky Bank employee who then falsely listed the remitter of the check as David Dadante, thus creating the appearance to a third party payee that Dadante had remitted the funds when, in fact, the funds came from the IPOF Fund. Defendant argues this transaction does not evidence active concealment since it is the customer's prerogative what to put on the remitter line.

Defendant further argues Plaintiff fails to allege sufficient facts to support a fraud claim based on non-disclosure. Plaintiff's Amended Complaint does not allege that Defendant failed to provide all account statements and transaction records to its customers, including the IPOF Fund.

Lastly, Defendant argues Plaintiff's fraud and civil conspiracy claims arise out of the fraudulent sales of securities therefore, his claims are time-barred under the relevant statute of

limitations period.

Plaintiff argues the Amended Complaint states sufficient, particularized facts to support his actual fraud claim. For example, The Amended Complaint alleges:

- Dadante moved IPOF Fund assets through the Accounts in numerous, highly suspicious transactions that should have raised warning flags with and warranted further investigation by Sky. (A.C. para. 14).
- Instead of acting on these red flags and notifying its customer, the IPOF Fund, Sky and its employees, acting in concert or combination with Dadante, directly participated in and facilitated such transactions for years with knowledge of or utter disregard and recklessness tantamount to knowledge of the fraud on IPOF Fund.
- Sky Bank employees actively concealed and willfully failed to disclose Dandante's fraud to the IPOF Fund for Dadante's benefit and their own personal benefit.
- Dadante would deposit IPOF Fund assets into the IPOF Checking Account at Sky; draw checks on that account made payable to GSGI, often exceeding one million dollars and/or totaling the deposited amount; deposit the checks into the GSGI account at Sky; and then, often on the same day request and receive teller or official checks in large amounts from Sky employees with individuals or other entities listed as remitter and made payable to brokerage firms, casinos, Dadante personally or others. All this would done with the assistance of Sky employees with no apparent business reason.

The Receiver's Amended Complaint describes in detail a number of such transactions with attached supporting bank records. The Amended Complaint alleges that certain Sky employees provided and signed official checks that exceeded the signor's authority limits in furtherance of the fraud. In addition, the Amended Complaint alleges that a Sky employee falsely identified, on official checks, the IPOF Fund as remitter when, in fact, the funds were drawn on the GSGI account. This was done with the full knowledge of the Sky employee. While serving as branch manager for Sky, an employee signed and/or caused to be issued official checks on IPOF Fund accounts, totaling $450,000, made payable to a casino but with the remitter listed as David Dadante. This was done with full knowledge that the source of the funds was the IPOF Fund and was intended to conceal from the IPOF Fund the fraud.

Plaintiff further alleges Sky employees regularly effected withdrawals from the Dadante controlled GSGI account based on large deposits into those accounts the same day, before the funds even cleared, in violation of Sky Bank policies. Also, the Amended Complaint alleges Sky Bank employees allowed Dadante to withdraw large amounts from GSGI account over the phone with the full knowledge that the actual source of the withdrawn funds was the IPOF Fund.

According to the Amended Complaint, but for the active concealment by Sky Bank of Dadante's activities, his fraud would have been discovered and the IPOF Fund would have withdrawn all of its funds from the accounts.

Plaintiff further alleges that Sky circumvented the protections of the dual signature requirements of the IPOF Checking Account in furtherance of the fraud.

Plaintiff's Amended Complaint alleges Sky concealed the fraud from its cutomer,

failed to disclose the fraud to its customer with the intent of misleading the IPOF Fund that its funds were being used for legitimate purposes. The IPOF Fund relied on Sky's concealments and nondisclosures to its detriment.

In Ohio, a Plaintiff must establish the following elements to support a claim of fraud: (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance upon the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Crown Property Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 656,( Ohio App. 12th Dist. 1996).

"A duty to disclose and corresponding liability for failure to disclose arises when: the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading." *Glassner v. R.J. Reynolds Tobacco Co.* 223 F.3d 343, 352 (6th Cir.,2000) citing *Miles v. McSwegin*, 58 Ohio St.2d 97, 388 N.E.2d 1367, 1369 (1979)).

Pursuant to Fed. Rule of Civil Procedure 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Defendant contends Plaintiff's Amended Complaint fails to allege with requisite specificity any actual fraud, misrepresentation, failure to disclose or active concealment by Sky. Instead, Plaintiff's Amended Complaint is replete with allegations that the Bank "participated" in Dadante's fraudulent Ponzi scheme. There is no allegation that Sky Bank or

its employees received any embezzled funds, or made any affirmative misrepresentations.

The same is true of Plaintiff's claim that Defendant "actively concealed" Dadante's fraud. There is no allegation that Defendant altered bank statements to the account holder or failed to send them to the proper address. By listing on the remitter line a party other than the actual account from which the funds were drawn, Plaintiff alleges the Bank concealed the true identity of the account. Defendant contends that the remitter description is the prerogative of the customer similar to that of a memo line on a check. Even if Sky knew the remitter requested by Dadante was incorrect, such an allegation only supports an aiding and abetting claim since there is no allegation the Bank suggested a false name to Dadante

Lastly, Defendant argues Plaintiff's failure to disclose claim relies entirely on the premise that Dadante's transactions should have raised red flags with Sky that Sky was obligated to disclose and did not. However, this is not an allegation that Sky failed to disclose a material fact, instead it alleges the Bank failed to disclose a conclusion that Sky should have made - i.e., Dadante was engaging in fraud on the IPOF Fund- even though there is no allegation Sky actually made this conclusion.

Ultimately, according to Defendant, Plaintiff's fraud claim is simply an attempt to recast his failed aiding and abetting fraud claim. However, like that claim, the factual predicates support at best an aiding and abetting claim and do not state a fraud claim.

Having reviewed the parties' Motion, Brief in Opposition, Reply and supporting materials, the Court denies Defendant's Motion to Dismiss the fraud claim. Plaintiff's Amended Complaint sufficiently alleges that particular, identified transactions that, when taken as true as the Court is obligated to do, support a claim for fraud.

The Amended Complaint alleges Sky and its employees:

- acted in concert with Dadante in perpetrating a fraud on the IPOF Fund with actual knowledge of the fraud.
- knew that statements for the Accounts were sent to Dadante and were not readily accessible to IPOF Fund investors.
- actively concealed and willfully failed to disclose Dadante's fraud to IPOF Fund for their own personal benefit.
- exceeded limitations on signing authority by signing official bank check allowing Dadante to withdraw over $1.4 million of funds deposited that same day, taken from the IPOF Fund account, deposited into Dadante's GSGI account, part of which was made payable to an investment firm. Sky Bank then falsified the remitter line to masquerade the true source of the funds.

The Amended Complaint alleges Sky falsified the remitter on several transactions in order to hide from IPOF Fund the source of the monies. Plaintiff further alleges there were several times funds were drawn from Dadante's undisclosed GSGI account while Sky falsely identified the remitter as IPOF, again to disguise the ongoing fraud. Plaintiff alleges Sky signed official checks totaling over $450,000 to the New York New York casino with a false remitter identified as Dadante. Also, the Amended Complaint alleges Sky intentionally skirted its own policies and procedures to further the fraud on the IPOF Fund by allowing withdrawals of funds, deposited that same day, without allowing them to clear and, in at least one instance, allowed a telephone withdrawal of over $100,000 by Dadante of IPOF Funds in violation of Sky's policies.

Lastly, Sky manipulated the dual signature requirement of the IPOF Checking Account, defrauding IPOF Fund of the security provided such a requirement. According to Plaintiff, but for Sky's concealment, the IPOF Fund would have discovered and stopped Dadante's activities.

These allegations, taken as true, present a plausible cause of action for fraud. They describe actual knowledge of, and participation in, the alleged fraud on the IPOF Fund beyond mere aiding and abetting. These include falsification of documents, bypassing policies and procedures all in furtherance of depleting the IPOF Fund to the benefit of Defendant.

**Civil Conspiracy**

The Amended Complaint alleges that Sky Bank and Dadante conspired to misappropriate IPOF Funds through the above described fraudulent transactions. Defendant contends Plaintiff fails to state a claim for conspiracy because he cannot show an underlying intentional tort, has failed to plead any agreement between Sky and Dadante, and failed to plead damages arising from the conspiracy distinct from the underlying fraud.

Plaintiff contends he has stated a claim for fraud, has plead distinct acts supporting his allegation that the Defendant conspired with Dadante to defraud the IPOF Fund, and Ohio law does not require an allegation of separate damages.

"Under Ohio law, a civil conspiracy consists of four elements: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 292, 629 N.E.2d 28 (1993).

The Court has determined Plaintiff's Amended Complaint adequately states a claim for fraud. Furthermore, the Northern District of Ohio, in applying Ohio law, has previously held a plaintiff need only prove damages arising from the underlying tort and not damages distinct from and attributable only to the conspiracy . See *Ziegler v. Findlay Industries, Inc.*, 380 F.Supp.2d 909, 914 (N.D. Ohio 2005) ("to succeed on a claim of civil conspiracy under Ohio law, a plaintiff need not plead or prove damages above and beyond those resulting from the tort or torts that are the object of the conspiracy.")

Also, the above elements of civil conspiracy are sufficiently alleged, in that the Amended Complaint describes discrete improper acts by both Dadante and Sky in furtherance of the alleged conspiracy to fraudulently loot the IPOF Fund as discussed previously.

Defendant contends Plaintiff's claims are barred by the doctrine of *in pari delicto*. " *In pari delicto* refers to the plaintiff's participation in the same wrongdoing as the defendant." *Bubis v. Blanton*, 885 F.2d 317, 321 (6th Cir.1989). According to Defendant, the Receiver represents the IPOF Fund. In his Amended Complaint, the Receiver alleges the IPOF Fund was a Ponzi scheme and not a legitimate business enterprise. Because it was not a legitimate enterprise, but was entirely used by Dadante to defraud investors, the Receiver, standing in the shoes of these entities, cannot recover because of the entities' own culpability in the fraud perpetrated on the investors.

Defendant cites to *Terlecky v. Hurd*, 133 F.3d 377 (6th Cir. 1997), wherein the Court upheld the dismissal of Plaintiff's Trustee's claims against Defendants on the basis of the *in pari delicto* defense because the Trustee represented corporate entities that engaged in fraudulent activities by selling fraudulent securities. The Court determined the Trustee

represented corporate entities that offered fraudulent securities and could not recover funds from others due to the companies' own culpability. The Court relied, in part, on the Trustee's own allegations that the corporation had no separate mind apart from the officers of the corporation who devised the fraud scheme.

The Court finds Defendant's *in pari delicto* defense unavailing because the IPOF Fund's culpability has yet to be established. *Terlecky* is distinguishable because in that case, the Trustee acknowledged that the debtor entities were culpable for fraudulent activity and individual actors who devised the fraud (i.e. officers of the debtor companies) exercised such control over the debtor companies such that they had no separate mind. That is not the case here, where no such allegations have been alleged in the Amended Complaint. This presents a factual issue on the relationship between Dadante and the IPOF Fund as to his control over the Fund.

Furthermore, at least two courts in this district have determined that once the bad actor has been removed from the company and a Receiver has been appointed, *in pari delicto* will not prevent the Receiver from seeking to recover wronged investor funds from third parties. See *Wuliger* at *6-7 and *Denune v. Consolidate Capital of North America, Inc.*, 288 F.Supp.2d 844 (N.D. Ohio 2003), both of which relied on the analysis of Judge Posner in *Scholes v. Lehmann,* 56 F.3d 750, 754-55 (7th Cir.1995), wherein he stated,

> "The appointment of the receiver removed the wrongdoer from the scene.... Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated. Now that the corporation[ ] ... [is] controlled by a receiver whose only object is to maximize the value of the corporation[ ] for the benefit of [its] investors and creditors, we cannot see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by [a principal of the corporation]."

The Court finds these cases persuasive and denies Defendant's Motion to Dismiss all Plaintiff's claims on the basis of the *in pari delicto* doctrine.[3]

Lastly, Defendant argues that since these claims arise from the sale of securities, O.R.C. § 1707.43 applies and therefore, Plaintiff's claims should be dismissed as outside the limitations period. O.R.C. § 1707.43 reads in pertinent part:

> (B) No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

Because Plaintiff alleges the wrongful acts occurred at the latest in 2005, and the Ponzi scheme was discovered in 2005, Defendant contends Plaintiff's filing of the Complaint in 2009 places it outside the two year limitation period, therefore, the claims are time barred.

The Court does not find this argument availing because O.R.C. § 1707.43 applies to purchasers of securities. In the Ponzi scheme context, the cases cited by Defendant were all brought by investors. That is not the case here where the Receiver, on behalf of the Fund, brings suit against a third party bank for negligence and fraud for allegedly looting the Fund for personal gain. Plaintiff is not seeking to void the purchase of securities on behalf of defrauded investors and the Amended Complaint does not allege that Sky was a seller of securities. Therefore, the Court denies Defendant's Motion to Dismiss based on § 1707.43.

Therefore, for the above stated reasons, the Court grants Defendant's Motion to

---

3 The Defendant bases its claim in part its contention that the IPOF Fund had no legitimate purpose. In fact, it did make some investments in legitimate stocks that resulted in substantial gains for investors.

Dismiss Plaintiff's Negligence claim but denies Defendant's Motion to Dismiss Plaintiff's Fraud and Conspiracy claims.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: February 10, 2014